Louis B. **BULLARD**, Debtor.

Louis B. Bullard, Appellant,

v.

Hyde Park Savings Bank, Appellee.

BAP No. MB 12–054.
Bankruptcy No. 10–23503–WCH.

United States Bankruptcy Appellate Panel of the First Circuit.

May 24, 2013.

David G. Baker, Esq., Boston, on brief for Appellant.

Andrew E. Goloboy, Esq. and Ronald W. Dunbar, Jr., Esq., Boston, on brief for Appellee. Tara Twomey, Esq., on brief for amicus curiae, National Association of Consumer Bankruptcy Attorneys.[1]

Before HAINES, TESTER, and GODOY, United States Bankruptcy Appellate Panel Judges.

HAINES, Bankruptcy Judge.

Louis B. Bullard appeals the bankruptcy court's order denying confirmation of his third amended chapter 13 plan. As explained below, we **AFFIRM**.

Bullard's plan proposed to bifurcate Hyde Park Savings Bank's secured claim. It sought to reduce the secured portion of the claim to the value of the collateral and to pay the balance a dividend (cents on the dollar) as an unsecured claim. At the same time, the plan proposed that the secured portion of the claim would be paid beyond the plan's term. Such plans, which attempt to take advantage of the "modification" provisions of § 1322(b)(2)[2] and the "cure and maintain" provisions of § 1322(b)(5), are often referred to as "hybrid" plans.[3]

The court below concluded that the plan was inconsistent with governing sections of the Bankruptcy Code and, thus, was not confirmable.[4] Although our rationale differs somewhat, we agree.

## BACKGROUND

Hyde Park holds a mortgage on Bullard's residential real estate as security for repayment of a promissory note with a maturity date of June 2035. The home includes a second unit and, thus, is not exclusively his residence. His bankruptcy schedules posited that the property's value was less than what he owed Hyde Park and represented that, at filing, he was current on his payment obligations under the secured note. Neither point is in contest.

Bullard's plan proposed that Hyde Park's claim would be bifurcated; that the unsecured portion would be paid a dividend over 60 months; and that monthly payments, in the same amount as called

---

1. We granted the motion of the National Association of Consumer Bankruptcy Attorneys, NACBA, to file an amicus curiae brief.

2. Unless expressly stated otherwise, hereinafter all references to "Bankruptcy Code," "Code," or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

3. One bankruptcy court has accurately defined the hybrid plan as follows:

   A hybrid plan is so-called because it is a modification plan that borrows features of the cure and maintain plan in an attempt to justify, under § 1322(b)(5), payment of the modified secured claim over a period longer than the term of the plan. In structure, a hybrid plan, like the present plan, (i) modifies the rights of a secured creditor by bifurcating its claim into secured and unsecured claims in accordance with 11 U.S.C. § 506(a), (ii) pays the unsecured claim a dividend—again, usually less than 100 per-

   cent—through the trustee over the duration of the plan, (iii) provides that the secured creditor retains the lien securing its secured claim until the payment in full of only the secured claim, (iv) cures the secured creditor's prepetition arrearage by payments through the trustee during the term of the plan, and (v) pays the secured claim (or at least so much of it as is not paid by curing the arrearage) directly and over a period longer than the duration of the plan by maintaining the payments required by the prepetition agreement between the debtor and secured creditor until and only until those payments, in the aggregate, fully amortize the secured claim in accordance with 11 U.S.C. § 1325(a)(5)(A)(ii) [sic].

   *In re Pires*, No. 09–18708, 2011 WL 5330772, at *4 (Bankr.D.Mass. Nov. 7, 2011).

4. *In re Bullard*, 475 B.R. 304 (Bankr.D.Mass. 2012).

for under the note, would be remitted directly to Hyde Park until the secured claim was fully paid. Specifically, the plan provided:

> The Confirmation Order shall effectively reduce the secured claim held by Hyde Park Savings Bank to the value of the real estate securing the loan.... The unsecured portion of the claim shall be treated consistently with all other claims in this plan. Pursuant to Section 1322(b)(5) the Debtors [sic] shall continue to make monthly payments as determined by the terms of the note. The Bank shall allocate principal, interest and escrow in accordance with the terms of the note. The Debtor shall file a Motion for Entry of Discharge ... which shall also include a document reflecting this adjustment of the principal balance for recording purposes. The motion will seek an accounting from the Bank to ensure that as of the date of discharge, the [sic] principal balance is consistent with the terms of the plan. In the event the case is dismissed prior to or without a discharge being entered, all payments received by the Bank from the Ch. 13 Trustee shall be applied to principal and interest in accordance with the terms of [sic] the note.

The bankruptcy court ruled, as a matter of law, that Bullard's hybrid plan was not confirmable. Bullard appealed. The bankruptcy court has continued generally the deadline for Bullard to file an amended plan, pending the outcome of this appeal.

**JURISDICTION**

■ A bankruptcy appellate panel is authorized to hear appeals "from final judgments, orders, and decrees [pursuant to 28 U.S.C. § 158(a)(1)], or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998) (internal quotations omitted). An interlocutory order " 'only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.' " *Id.* at 646 (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). Previously, we have ruled that an order sustaining an objection to confirmation of a chapter 13 plan is not a final order if a debtor is free to propose an alternate plan. *Watson v. Boyajian (In re Watson)*, 309 B.R. 652, 659 (1st Cir. BAP 2004), *aff'd*, 403 F.3d 1 (1st Cir.2005) (citing *Bentley v. Boyajian (In re Bentley)*, 266 B.R. 229, 233 (1st Cir. BAP 2001)).

Bullard moved for leave to appeal, arguing that courts in this circuit are divided on the issue whether hybrid plans can be confirmed. He asserted that, absent leave to appeal, the issue is unlikely to receive timely appellate guidance. In granting the motion, a decision which we ratify, we determined that the matter met pertinent standards for interlocutory review.[5]

---

**5.** Bullard had argued that review was warranted under 28 U.S.C. § 158(a)(3). In our order, we explained that the statute, as informed by 28 U.S.C. § 1292(b), authorized us to decide the appeal so long as: (1) the "order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) whether "an immediate appeal from the order may materially advance the ultimate termination of the litigation." We concluded that because the appeal involved an interpretation of two statutes governing plan confirmation, addressed difficult and pivotal questions of law upon which courts in this circuit were divided, and would materially advance the ultimate termination of the litigation, Bullard had established the criteria necessary to proceed with an interlocutory appeal.

### STANDARD OF REVIEW

■ Appellate courts apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *Rockwood v. SKF USA Inc.*, 687 F.3d 1, 10 (1st Cir.2012). The bankruptcy court's order entered was based on its determination that, as a matter of law, Bullard's plan could not be confirmed over objection. We therefore proceed to review that conclusion *de novo*. *Fed. Nat'l Mortgage Ass'n v. Ferreira (In re Ferreira)*, 223 B.R. 258, 260 (D.R.I.1998); *Stornawaye Fin. Corp. v. Hill (In re Hill)*, 387 B.R. 339, 345 (1st Cir. BAP 2008).

### DISCUSSION

**I. Chapter 13 Modification, Maintenance, Distribution, and Discharge: Cross–Reference and Context**

Massachusetts bankruptcy courts are split on the issue of hybrid plans. *Compare In re Pires*, 2011 WL 5330772, at *7, with *In re McGregor*, 172 B.R. 718 (Bankr. D.Mass.1994). Decisions elsewhere are in disarray. *Compare In re Elibo*, 447 B.R. 359, 363 (Bankr.S.D.Fla.2011) (adopting *McGregor*);[6] and *In re Pruett*, 178 B.R. 7, 8 (Bankr.N.D.Ala.1995) (adopting *McGregor* ) with *Enewally v. Washington Mutual Bank (In re Enewally)*, 368 F.3d 1165, 1171–72 (9th Cir.2004) (concluding hybrid plan incompatible with applicable Code provisions); *Columbia Nat'l Inc. v. Brown (In re Brown)*, 399 B.R. 574, 575 (D.Conn. 2008) (relying on *Koper, infra,* for proposition that § 1322 options are mutually ex-

clusive); *In re Fortin*, 482 B.R. 35, 43 (Bankr.D.Mass.2012) ("After careful consideration of the matter, I am convinced that the Bankruptcy Code does not permit the use of subsections (b)(2) and (5) in the same plan with respect to the same claim."); *In re Hinkle*, 474 B.R. 460, 465 (Bankr.M.D.Pa.2012) ("Consistent with this enduring principle [that liens pass through bankruptcy unaffected], any allowable modification of the Claim must occur within the term of the Plan."); *In re Martin*, 444 B.R. 538, 545 (Bankr.M.D.N.C. 2011) (agreeing with *Enewally* and rejecting hybrid plan); *In re Valdes*, No. 09–26712–BKC–AJC, 2010 WL 3956814 (Bankr.S.D.Fla. Oct. 4, 2010) (same); *In re Russell*, 458 B.R. 731, 739 (Bankr.E.D.Va. 2010) (explaining how hybrid plan would negatively effect discharge exclusion for § 1322(b)(5) plan); *In re Bulson*, 327 B.R. 830, 847 (Bankr.W.D.Mich.2005) (relying on *In re Stivender* ); *In re Stivender*, 301 B.R. 498, 500 (Bankr.S.D.Ohio 2003) ("In other words, the invocation of § 1322(b)(5)'s cure and maintain provision does not change the fact that § 1322(b)(2)'s strip and pay provision is subject to the five year limitation of § 1322(d)."); *In re Koper*, 284 B.R. 747 (Bankr.D.Conn.2002) ("A secured claim that is modified by a plan is plainly 'provided for' by that plan, as contemplated by Section 1325(a)(5).... the time period allowed to amortize the modified secured claim is constrained by Section 1322(d); namely, the plan cannot provide for distributions which extend beyond five years").[7]

---

**6.** *See also* Nicole M. Mariani, *Incompatible Personalities*, 31 Am. Bankr. Inst. J. 42 n. 14 (2012) (discussing case law division as exemplified by the split in the southern district of Florida).

**7.** Bullard asserts that the First Circuit cited *McGregor* with approval in *Lomas Mtg. v. Louis*, 82 F.3d 1, 4 n. 3 (1st Cir.1996). In that case, the court ruled that § 1322(b)(2) does

not bar modification of a secured claim on a multi-unit property in which a debtor resides. While the court did cite to *McGregor,* the reference was in a string cite of cases explicating the debtors' argument as to the construction of the statute as it pertained to the issue before the court. The Third Circuit's reference to *McGregor* is comparable. *Scarborough v. Chase Manhattan Mtg. Corp. (In re*

■ Though it is tempting to start with a review of the case law, to assay how a chapter 13 plan may permissibly treat a secured claim, we properly commence our inquiry with the language of the Bankruptcy Code. *See Shamus Holdings, LLC v. LBM Fin., LLC (In re Shamus Holdings, LLC)*, 642 F.3d 263, 265 (1st Cir.2011) ("Statutory interpretation starts—and often ends—with the text of the statute."). When a statute is clear, "the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917); *accord Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Although our conclusion today springs directly from the Bankruptcy Code's terms, we eschew a declaration that it is simply a matter of "plain meaning."[8] The answer to the puzzle posed by Bullard's hybrid plan can be drawn from the text of all pertinent Code sections touching on treatment of secured claims in chapter 13, but doing so requires a good deal of effort.

### A. Section 1322(b)(2): Modification of Creditors' Rights

Subsection § 1322(b)(2) provides:

(b) Subject to subsections (a) and (c) of this section,[9] the plan may—...

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

11 U.S.C. § 1322(b)(2).

■ As Bullard's residential real estate includes a unit separate from the one in which he resides, Hyde Park's claim is not secured solely by his primary residence. Its note and mortgage are subject to modification by way of § 1322(b)(2).

"Rights" is not a defined term in the Bankruptcy Code, so we look to underlying state law to determine what creditor rights are subject to modification. *See Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (ownership and security interests, including the interest of a mortgagee, are created and defined by state law); *see also Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). Under Massachusetts law, Hyde Park's rights are defined by the note and mortgage Bullard signed. Those documents gave Hyde Park the right to full principal repayment at a specific interest rate over a specified term, a monthly payment in a specified amount, the right to accelerate upon default, and the right to

*Scarborough)*, 461 F.3d 406, 411 (3d Cir. 2006). Both citations to *McGregor* were not with reference to hybrid plans.

8. These days few things are less plain than the breadth and application of the plain meaning doctrine. *Compare, e.g., RadLAX Gateway Hotel, LLC. v. Amalgamated Bank*, —— U.S. ——, 132 S.Ct. 2065, 2070–71, 182 L.Ed.2d 967 (2012) (meaning of § 1129(b)(2)(A) and its subparts is plain, although two out of three courts of appeals read it differently; plain meaning cannot be gleaned from "hyperliteral" reading), *with Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127 S.Ct. 1105, 1110–11, 166 L.Ed.2d 956 (2007) (statutorily un-

qualified right of debtor to convert chapter 7 case to chapter 13 is, after all, qualified, notwithstanding clarity of statute's language).

A creditable doctrine of statutory interpretation should be a constant within a court's jurisprudence, rather than a tool one jurist or another pulls off the shelf when handy to foreclose reasoned argument.

9. "[C]ourts have uniformly concluded that this is a drafting error" and that the prefatory language should read subject to subsections (a) and (d). *See In re Bullard*, 475 B.R. at 308 n. 18.

invoke the statutory power of sale. Under Massachusetts law, if a mortgage grants a power of sale, a mortgagee can exercise that power by foreclosing on property without judicial procedure so long as it proceeds pursuant to applicable statutory provisions. *See Eaton v. Fed. Nat'l Mtg. Ass'n,* 462 Mass. 569, 969 N.E.2d 1118 (2012) (citing, *inter alia,* Mass. Gen. Laws ch. 183, § 21 and ch. 244, § 14).

In his plan, Bullard proposed to modify several of Hyde Park's rights. First, he proposed to reduce the amount of principal secured by the mortgage by way of bifurcation based on valuation of the property via § 506(a) [10] and § 1322(b)(2).[11] He also proposed to shorten the mortgage note— to pay only the secured claim as reduced by bifurcation—although that reduced term would endure beyond the life span of the plan itself.[12] Bullard did not, however,

propose to "modify" the monthly payment amount set by the note.[13]

On its face, § 1322(b)(2) includes no specific conditions or limitations on modification. It simply permits a debtor to propose a plan that modifies a creditor's rights. However, though § 1322(b)(2) is not, by itself, qualified, its operation is subject to other chapter 13 provisions. Section 1325(a)(5) imposes requirements for treatment of secured claims as conditions for confirmation.

## B.    The Protections of "Cramdown"

### 1.    Requirements of § 1325(a)(5)

To obtain a confirmation order over the objection of a secured creditor, a plan must treat the applicable claim pursuant to the provisions of § 1325 as follows:

(a)  Except as provided in subsection (b), the court shall confirm a plan if—. . .

---

**10.**  Section 506, in part, provides:

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
11 U.S.C. § 506.

**11.**  In his brief, Bullard contends that reducing the principal amount of the mortgage via § 506(a) is not a modification within the meaning of § 1322(b)(2). The Supreme Court specifically stated the opposite in *Nobelman:*

The bank's contractual rights are contained in a unitary note that applies at once to the bank's overall claim, including both the se-

cured and unsecured components. Petitioners *cannot modify the payment and interest terms for the unsecured component,* as they propose to do, without also modifying the terms of the secured component. Thus, to preserve the interest rate and the amount of each monthly payment specified in the note after having reduced the principal . . ., the plan would also have to reduce the term of the note dramatically. That would be a serious modification of a contractual right.

*Nobelman v. Amer. Sav. Bank,* 508 U.S. 324, 331, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

**12.**  Section 1322(d) limits chapter 13 plans to a maximum of five years.

**13.**  *See In re Bullard,* 475 B.R. at 305–06 (quoting operative terms of plan). Bullard intends to maintain the monthly payment called for by the note, without change. Whether that, coupled with the principal reduction the plan calls for is or is not a "modification" is open to question, as the reduced principal will necessarily affect interest accrual and balance amortization. For now, it is a question we need not answer, as the other modifications the plan attempts are apparent.

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim until the earlier of—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder.

11 U.S.C. § 1325(a)(5).

Under this section, Bullard's plan may be confirmed if either: (1) Hyde Park accepts the plan;[14] (2) Bullard surrenders his home;[15] or (3) Hyde Park retains the lien securing Bullard's home and receives "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim".[16] Therefore, under § 1325, unless Hyde Park accepts the plan, or Bullard surrenders his home, the plan must guarantee that the distribution on account of the secured claim must equal the present dollar value of the home as of the confirmation date, and that distribution on account of the claim must occur within five years. 11 U.S.C. § 1322(d)(1); *see* 8 *Collier on Bankruptcy,* ¶ 1325.06 (Alan N. Resnick & Henry Sommer eds. 15th ed. rev. 2006). Bullard's plan, however, proposes that payments on Hyde Park's secured claim (reduced by bifurcation) shall continue well beyond his plan's five-year term.

## 2. Distribution period exception for § 1322(b)(5)

Citing § 1322(b)(5) and *In re McGregor,* Bullard argues that the five-year limit imposed by § 1322(d)(1) on the distribution made to Hyde Park does not apply. Section 1322(b)(5) provides:

(b) Subject to subsections (a) and (c) of this section, [[17]] the plan may— . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments

---

**14.** 11 U.S.C. § 1325(a)(5)(A).

**15.** 11 U.S.C. § 1325(a)(5)(C).

**16.** 11 U.S.C. § 1325(a)(5)(B)(i)–(ii).

**17.** *See infra* note 9.

while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ...

11 U.S.C. § 1322(b)(5).

Bullard asserts that elements of §§ 1322(b)(2) and (5) may be combined, allowing a plan to modify the rights of a secured creditor *and* extend distribution on that creditor's secured claim past the life of the plan, so long as there is "maintenance of payments" as bargained for in the underlying mortgage documents. To Bullard, "maintenance of payments" means he need only pay Hyde Park the same amount every month as he did pre-petition, with the same allocation to interest and principal. He argues this "hybrid plan" is permissible as there is no explicit prohibition from combining the two sections within § 1322(b): since they have not been drafted to be expressly "mutually exclusive," he can meld them in his plan.

This much is true: § 1322(b) does not expressly prohibit combining subparagraphs (2) and (5) to treat a single secured claim. But that is not the whole story. Section 1322 does not exist in a vacuum. Read in conjunction with other sections of the Code, Bullard's insistence that secured claim reduction-by-bifurcation and beyond-plan distributions in respect to such a claim can coexist must fall.

### C. The Interplay of §§ 1328 and 1325

■ Combining §§ 1322(b)(2) and (5) results in a plan that cannot comport with the requirements of § 1325(a)(5)(B)(i)(I), and is, therefore, unconfirmable. Courts must apply § 1325(a)(5)(B)(i)(I) when the holder of an allowed secured claim objects to its treatment under a plan and the debtor is not surrendering the underlying collateral. Specifically, it states that: "(I) the holder of such claim retain the lien

securing such claim until the earlier of— (aa) the payment of the *underlying debt determined under nonbankruptcy law;* or (bb) discharge under section 1328." 11 U.S.C. § 1325(a)(5)(B)(i)(I) (emphasis added.).

The nonbankruptcy law that defines Bullard's debt to Hyde Park is Massachusetts law. Thus, the mortgage and note describe and determine the "underlying debt." Here, the "underlying debt" is the entire outstanding obligation secured by Bullard's home. It is not, as Bullard argues, the amount of the bank's allowed secured claim. An "allowed secured claim" is native—and exclusive to—the bankruptcy habitat. It does not exist outside of the federal scheme.

Therefore, in order for his treatment of Hyde Park's claim to be confirmable, Bullard's last hope is § 1325(a)(5)(B)(i)(I)(bb), which would dictate satisfaction of the bank's lien on discharge. But his plan simply ignores its operation. Rather, chapter 13's discharge provision reinforces our conclusion that Bullard's hybrid plan must fail. Section 1328 provides for several possible outcomes of a case, but importantly here, it specifically states that debts "provided for" under § 1325(a)(5) are excepted from discharge:

(a) Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, ... the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, *except any debt—*

*(1) provided for under section 1322(b)(5)[.]*

11 U.S.C. § 1328(a)(1) (emphasis supplied).

"Provided for" is not a defined term in the Code, but the Supreme Court has said that:

As used in § 1328(a), that phrase is commonly understood to mean that a plan "makes a provision" for, "deals with," or even "refers to" a claim.... [Section] 1328(a) unmistakably contemplates that a plan "provides for" a claim when the plan cures a default and allows for the maintenance of regular payments on that claim, as authorized by § 1322(b)(5).

*Rake v. Wade*, 508 U.S. 464, 474, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993).

Bullard's plan clearly "provides for" Hyde Park's claim under § 1322(b)(5), indeed, he has invoked § 1322(b)(5) in his cause, and, therefore, the mortgage debt will not be discharged on plan completion. As a consequence, Hyde Park will continue thereafter to retain its lien securing that debt. 11 U.S.C. § 1325(a)(5)(B)(i)(I).

■■ In effect, § 1328(a)(1) establishes that as long as a plan employs § 1322(b)(5), it can *only* be confirmed over the creditor's objection via § 1325(a)(5)(B)(i)(I)(aa). And, since that section states the debt, *as determined by nonbankruptcy law*, must be paid, a debtor may not use it *and* bifurcate the applicable claim via § 506(a). To do so would render § 1325(a)(5)(B)(i)(I) ineffective. *See Rake v. Wade*, 508 U.S. at 471, 113 S.Ct. 2187.[18]

## II. Other Perspectives from Within the Code

As explained above, Bullard's plan is not confirmable when the pertinent provisions of chapter 13 are given their effect. Our conclusion is reinforced by the content of other rehabilitation chapters within the Code. Both chapter 11[19] and chapter 12[20] expressly provide debtors with the ability to obtain the two-fisted restructuring (claim modification via bifurcation coupled with payment extension) that Bullard craves. It is telling that Congress has demonstrated the ability to craft internally consistent schemes to provide such relief elsewhere in the Code, but has not provided it to chapter 13 debtors.

### CONCLUSION

Bullard's hybrid plan cannot be confirmed. The plan cannot employ both § 1322(b)(2) and (5) to reduce Hyde Park's secured claim and, at the same time, pay that secured claim over a period beyond the plan's term. Accordingly, we **AFFIRM**.

---

18. "We generally avoid construing one provision in a statute so as to suspend or supersede another provision. To avoid deny[ing] effect to a part of a statute, we accord significance and effect ... to every word." *Rake v. Wade*, 508 U.S. at 471, 113 S.Ct. 2187 (citing *Ex parte Public Nat'l Bank of NY*, 278 U.S. 101, 104, 49 S.Ct. 43, 73 L.Ed. 202 (1928); *Market Co. v. Hoffman*, 101 U.S. 112, 115, 25 L.Ed. 782 (1879)) (internal quotations omitted).

19. *See* 11 U.S.C. §§ 1123(a)(5)(E), (G), (H); (b)(5); 11 U.S.C. § 1129(a)(9).

20. *See* 11 U.S.C. §§ 1222(b)(2) and (9); 11 U.S.C. § 1225(a)(5)(B)(i).