(Slip Opinion) OCTOBER TERM, 2014 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BULLARD *v.* BLUE HILLS BANK, FKA HYDE PARK SAVINGS BANK

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 14–116.  Argued April 1, 2015—Decided  May 4, 2015

After filing for Chapter 13 bankruptcy, petitioner Bullard submitted a proposed repayment plan to the Bankruptcy Court.  Respondent Blue Hills Bank, Bullard's mortgage lender, objected to the plan's treatment of its claim.  The Bankruptcy Court sustained the Bank's objection and declined to confirm the plan.  Bullard appealed to the First Circuit Bankruptcy Appellate Panel (BAP).  The BAP concluded that the Bankruptcy Court's denial of confirmation was not a final, appealable order, see 28 U. S. C. §158(a)(1), but heard the appeal under a provision permitting interlocutory appeals "with leave of the court," §158(a)(3), and agreed with the Bankruptcy Court that Bullard's proposed plan was not allowed.  Bullard appealed to the First Circuit, but it dismissed for lack of jurisdiction.  It concluded that its jurisdiction depended on the finality of the BAP's order, which in turn depended on the finality of the Bankruptcy Court's order.  And it found that the Bankruptcy Court's order denying confirmation was not final so long as Bullard remained free to propose another plan.

*Held*: A bankruptcy court's order denying confirmation of a debtor's proposed repayment plan is not a final order that the debtor can immediately appeal.  Pp. 4–12.

   (a) Congress has long treated orders in bankruptcy cases as immediately appealable "if they finally dispose of discrete disputes within the larger case," *Howard Delivery Service, Inc.* v. *Zurich American Ins. Co.*, 547 U. S. 651, 657, n. 3.  This approach is reflected in the current statute, which provides that bankruptcy appeals as of right may be taken not only from final judgments in cases but from "final judgments, orders, and decrees . . . in cases and proceedings."  28 U. S. C. §158(a).  Bullard argues that a bankruptcy court conducts a

separate proceeding each time it reviews a proposed plan, and therefore a court's order either confirming or denying a plan terminates the proceeding and is final and immediately appealable. But the relevant proceeding is the entire process of attempting to arrive at an approved plan that would allow the bankruptcy case to move forward. Only plan confirmation, or case dismissal, alters the status quo and fixes the parties' rights and obligations; denial of confirmation with leave to amend changes little and can hardly be described as final. Additional considerations—that the statute defining core bankruptcy proceedings lists "confirmations of plans," §157(b)(2)(L), but omits any reference to denials; that immediate appeals from denials would result in delays and inefficiencies that requirements of finality are designed to constrain; and that a debtor's inability to immediately appeal a denial encourages the debtor to work with creditors and the trustee to develop a confirmable plan—bolster the conclusion that the relevant proceeding is the entire process culminating in confirmation or dismissal. Pp. 4–8.

(b) The Solicitor General suggests that because bankruptcy disputes are generally classified as either "adversary proceedings" or "contested matters," and because an order denying confirmation and an order granting confirmation both resolve a contested matter, both should be considered final. This argument simply assumes that confirmation is appealable because it resolves a contested matter, and that therefore anything else that resolves the contested matter must also be appealable. But one could just as easily contend that confirmation is appealable because it resolves the entire plan consideration process, while denial is not because it does not. Any asymmetry in denying the debtor an immediate appeal from a denial while allowing a creditor an immediate appeal from a confirmation simply reflects the fact that confirmation allows the bankruptcy to go forward and alters the legal relationships among the parties, while denial lacks such significant consequences. Nor is it clear that the asymmetry will always advantage creditors. Finally, Bullard contends that unless denial orders are final, a debtor will be required to choose between two untenable options: either accept dismissal of the case and then appeal, or propose an amended but unwanted plan and appeal its confirmation. These options will often be unsatisfying, but our litigation system has long accepted that certain burdensome rulings will be "only imperfectly reparable" by the appellate process. *Digital Equipment Corp.* v. *Desktop Direct, Inc.*, 511 U. S. 863, 872. That prospect is made tolerable by the Court's confidence that bankruptcy courts rule correctly most of the time and by the existence of several mechanisms for interlocutory review, *e.g.,* §§158(a)(3), (d)(2), which "serve as useful safety valves for promptly correcting serious errors"

Syllabus

and resolving legal questions important enough to be addressed immediately. *Mohawk Industries, Inc.* v. *Carpenter*, 558 U. S. 100, 111. Pp. 8–12.

752 F. 3d 483, affirmed.

ROBERTS, C. J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 14–116

_____

## LOUIS B. BULLARD, PETITIONER *v.* BLUE HILLS BANK, FKA HYDE PARK SAVINGS BANK

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[May 4, 2015]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

Chapter 13 of the Bankruptcy Code affords individuals receiving regular income an opportunity to obtain some relief from their debts while retaining their property. To proceed under Chapter 13, a debtor must propose a plan to use future income to repay a portion (or in the rare case all) of his debts over the next three to five years. If the bankruptcy court confirms the plan and the debtor successfully carries it out, he receives a discharge of his debts according to the plan.

The bankruptcy court may, however, decline to confirm a proposed repayment plan because it is inconsistent with the Code. Although the debtor is usually given an opportunity to submit a revised plan, he may be convinced that the original plan complied with the Code and that the bankruptcy court was wrong to deny confirmation. The question presented is whether such an order denying confirmation is a "final" order that the debtor can immediately appeal. We hold that it is not.

I

In December 2010, Louis Bullard filed a petition for Chapter 13 bankruptcy in Federal Bankruptcy Court in Massachusetts. A week later he filed a proposed repayment plan listing the various claims he anticipated creditors would file and the monthly amounts he planned to pay on each claim over the five-year life of his plan. See 11 U. S. C. §§1321, 1322. Chief among Bullard's debts was the roughly $346,000 he owed to Blue Hills Bank, which held a mortgage on a multifamily house Bullard owned. Bullard's plan indicated that the mortgage was significantly "underwater": that is, the house was worth substantially less than the amount Bullard owed the Bank.

Before submitting his plan for court approval, Bullard amended it three times over the course of a year to more accurately reflect the value of the house, the terms of the mortgage, the amounts of creditors' claims, and his proposed payments. See §1323 (allowing preconfirmation modification). Bullard's third amended plan—the one at issue here—proposed a "hybrid" treatment of his debt to the Bank. He proposed splitting the debt into a secured claim in the amount of the house's then-current value (which he estimated at $245,000), and an unsecured claim for the remainder (roughly $101,000). Under the plan, Bullard would continue making his regular mortgage payments toward the secured claim, which he would eventually repay in full, long after the conclusion of his bankruptcy case. He would treat the unsecured claim, however, the same as any other unsecured debt, paying only as much on it as his income would allow over the course of his five-year plan. At the end of this period the remaining balance on the unsecured portion of the loan would be discharged. In total, Bullard's plan called for him to pay only about $5,000 of the $101,000 unsecured claim.

The Bank (no surprise) objected to the plan and, after a

hearing, the Bankruptcy Court declined to confirm it. *In re Bullard*, 475 B. R. 304 (Bkrtcy. Ct. Mass. 2012). The court concluded that Chapter 13 did not allow Bullard to split the Bank's claim as he proposed unless he paid the secured portion in full during the plan period. *Id.,* at 314. The court acknowledged, however, that other Bankruptcy Courts in the First Circuit had approved such arrangements. *Id.,* at 309. The Bankruptcy Court ordered Bullard to submit a new plan within 30 days. *Id.,* at 314.

Bullard appealed to the Bankruptcy Appellate Panel (BAP) of the First Circuit. The BAP first addressed its jurisdiction under the bankruptcy appeals statute, noting that a party can immediately appeal only "final" orders of a bankruptcy court. *In re Bullard*, 494 B. R. 92, 95 (2013) (citing 28 U. S. C. §158(a)(1)). The BAP concluded that the order denying plan confirmation was not final because Bullard was "free to propose an alternate plan." 494 B. R., at 95. The BAP nonetheless exercised its discretion to hear the appeal under a provision that allows interlocutory appeals "with leave of the court." §158(a)(3). The BAP granted such leave because the confirmation dispute involved a "controlling question of law . . . as to which there is substantial ground for difference of opinion," and "an immediate appeal [would] materially advance the ultimate termination of the litigation." 494 B. R., at 95, and n. 5. On the merits, the BAP agreed with the Bankruptcy Court that Bullard's proposed treatment of the Bank's claim was not allowed. *Id.,* at 96–101.

Bullard sought review in the Court of Appeals for the First Circuit, but that court dismissed his appeal for lack of jurisdiction. *In re Bullard*, 752 F. 3d 483 (2014). The First Circuit noted that because the BAP had not certified the appeal under §158(d)(2), the only possible source of Court of Appeals jurisdiction was §158(d)(1), which allowed appeal of only a final order of the BAP. *Id.,* at 485, and n. 3. And under First Circuit precedent "an order of

the BAP cannot be final unless the underlying bankruptcy court order is final." *Id.,* at 485. The Court of Appeals accordingly examined whether a bankruptcy court's denial of plan confirmation is a final order, a question that it recognized had divided the Circuits. Adopting the majority view, the First Circuit concluded that an order denying confirmation is not final so long as the debtor remains free to propose another plan. *Id.,* at 486–490.

We granted certiorari. 574 U. S. ___ (2014).

## II

In ordinary civil litigation, a case in federal district court culminates in a "final decisio[n]," 28 U. S. C. §1291, a ruling "by which a district court disassociates itself from a case," *Swint* v. *Chambers County Comm'n*, 514 U. S. 35, 42 (1995). A party can typically appeal as of right only from that final decision. This rule reflects the conclusion that "[p]ermitting piecemeal, prejudgment appeals . . . undermines 'efficient judicial administration' and encroaches upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation." *Mohawk Industries, Inc.* v. *Carpenter*, 558 U. S. 100, 106 (2009) (quoting *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U. S. 368, 374 (1981)).

The rules are different in bankruptcy. A bankruptcy case involves "an aggregation of individual controversies," many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor. 1 Collier on Bankruptcy ¶5.08[1][b], p. 5–42 (16th ed. 2014). Accordingly, "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *Howard Delivery Service, Inc.* v. *Zurich American Ins. Co.*, 547 U. S. 651, 657, n. 3 (2006) (internal quotation marks and emphasis omitted). The current bankruptcy appeals statute reflects this approach: It authorizes appeals as of right not only

from final judgments in cases but from "final judgments, orders, and decrees . . . in cases and proceedings." §158(a).

The present dispute is about how to define the immediately appealable "proceeding" in the context of the consideration of Chapter 13 plans. Bullard argues for a plan-by-plan approach. Each time the bankruptcy court reviews a proposed plan, he says, it conducts a separate proceeding. On this view, an order denying confirmation and an order granting confirmation both terminate that proceeding, and both are therefore final and appealable.

In the Bank's view Bullard is slicing the case too thin. The relevant "proceeding," it argues, is the entire process of considering plans, which terminates only when a plan is confirmed or—if the debtor fails to offer any confirmable plan—when the case is dismissed. An order denying confirmation is not final, so long as it leaves the debtor free to propose another plan.

We agree with the Bank: The relevant proceeding is the process of attempting to arrive at an approved plan that would allow the bankruptcy to move forward. This is so, first and foremost, because only plan confirmation—or case dismissal—alters the status quo and fixes the rights and obligations of the parties. When the bankruptcy court confirms a plan, its terms become binding on debtor and creditor alike. 11 U. S. C. §1327(a). Confirmation has preclusive effect, foreclosing relitigation of "any issue actually litigated by the parties and any issue necessarily determined by the confirmation order." 8 Collier ¶1327.02[1][c], at 1327–6; see also *United Student Aid Funds, Inc.* v. *Espinosa*, 559 U. S. 260, 275 (2010) (finding a confirmation order "enforceable and binding" on a creditor notwithstanding legal error when the creditor "had notice of the error and failed to object or timely appeal"). Subject to certain exceptions, confirmation "vests all of the property of the [bankruptcy] estate in the debtor," and renders that property "free and clear of any claim or inter-

est of any creditor provided for by the plan." §§1327(b), (c). Confirmation also triggers the Chapter 13 trustee's duty to distribute to creditors those funds already received from the debtor. §1326(a)(2).

When confirmation is denied *and the case is dismissed as a result*, the consequences are similarly significant. Dismissal of course dooms the possibility of a discharge and the other benefits available to a debtor under Chapter 13. Dismissal lifts the automatic stay entered at the start of bankruptcy, exposing the debtor to creditors' legal actions and collection efforts. §362(c)(2). And it can limit the availability of an automatic stay in a subsequent bankruptcy case. §362(c)(3).

Denial of confirmation with leave to amend, by contrast, changes little. The automatic stay persists. The parties' rights and obligations remain unsettled. The trustee continues to collect funds from the debtor in anticipation of a different plan's eventual confirmation. The possibility of discharge lives on. "Final" does not describe this state of affairs. An order denying confirmation does rule out the specific arrangement of relief embodied in a particular plan. But that alone does not make the denial final any more than, say, a car buyer's declining to pay the sticker price is viewed as a "final" purchasing decision by either the buyer or seller. "It ain't over till it's over."

Several additional considerations bolster our conclusion that the relevant "proceeding" is the entire process culminating in confirmation or dismissal. First is a textual clue. Among the list of "core proceedings" statutorily entrusted to bankruptcy judges are "confirmations of plans." 28 U. S. C. §157(b)(2)(L). Although this item hardly clinches the matter for the Bank—the provision's purpose is not to explain appealability—it does cut in the Bank's favor. The presence of the phrase "confirmations of plans," combined with the absence of any reference to denials, suggests that Congress viewed the larger confir-

mation process as the "proceeding," not the ruling on each specific plan.

In Bullard's view the debtor can appeal the denial of the first plan he submits to the bankruptcy court. If the court of appeals affirms the denial, the debtor can then revise the plan. If the new plan is also denied confirmation, another appeal can ensue. And so on. As Bullard's case shows, each climb up the appellate ladder and slide down the chute can take more than a year. Avoiding such delays and inefficiencies is precisely the reason for a rule of finality. It does not make much sense to define the pertinent proceeding so narrowly that the requirement of finality would do little work as a meaningful constraint on the availability of appellate review.

Bullard responds that concerns about frequent piecemeal appeals are misplaced in this context. Debtors do not typically have the money or incentives to take appeals over small beer issues. They will only appeal the relatively rare denials based on significant legal rulings— precisely the cases that should proceed promptly to the courts of appeals. Brief for Petitioner 43–46.

Bullard's assurance notwithstanding, debtors may often view, in good faith or bad, the prospect of appeals as important leverage in dealing with creditors. An appeal extends the automatic stay that comes with bankruptcy, which can cost creditors money and allow a debtor to retain property he might lose if the Chapter 13 proceeding turns out not to be viable. These concerns are heightened if the same rule applies in Chapter 11, as the parties assume. Chapter 11 debtors, often business entities, are more likely to have the resources to appeal and may do so on narrow issues. See Tr. of Oral Arg. 51. But even if Bullard is correct that such appeals will be rare, that does not much support his broader point that an appeal of right should be allowed in every case. It is odd, after all, to argue in favor of allowing more appeals by emphasizing

that almost nobody will take them.

We think that in the ordinary case treating only confirmation or dismissal as final will not unfairly burden a debtor. He retains the valuable exclusive right to propose plans, which he can modify freely. 11 U. S. C. §§1321, 1323. The knowledge that he will have no guaranteed appeal from a denial should encourage the debtor to work with creditors and the trustee to develop a confirmable plan as promptly as possible. And expedition is always an important consideration in bankruptcy.

## III

Bullard and the Solicitor General present several arguments for treating each plan denial as final, but we are not persuaded.

The Solicitor General notes that disputes in bankruptcy are generally classified as either "adversary proceedings," essentially full civil lawsuits carried out under the umbrella of the bankruptcy case, or "contested matters," an undefined catchall for other issues the parties dispute. See Fed. Rule Bkrtcy. Proc. 7001 (listing ten adversary proceedings); Rule 9014 (addressing "contested matter[s] not otherwise governed by these rules"). An objection to a plan initiates a contested matter. See Rule 3015(f). Everyone agrees that an order resolving that matter by overruling the objection and confirming the plan is final. As the Solicitor General sees it, an order denying confirmation would also resolve that contested matter, so such an order should also be considered final. Brief for United States as *Amicus Curiae* 19–22.

The scope of the Solicitor General's argument is unclear. At points his brief appears to argue that an order resolving *any* contested matter is final and immediately appealable. That version of the argument has the virtue of resting on a general principle—but the vice of being implausible. As a leading treatise notes, the list of con-

tested matters is "endless" and covers all sorts of minor disagreements. 10 Collier ¶9014.01, at 9014–3. The concept of finality cannot stretch to cover, for example, an order resolving a disputed request for an extension of time.

At other points, the Solicitor General appears to argue that because one possible resolution of this particular contested matter (confirmation) is final, the other (denial) must be as well. But this argument begs the question. It simply assumes that confirmation is appealable because it resolves a contested matter, and that therefore anything else that resolves the contested matter must also be appealable. But one can just as easily contend that confirmation is appealable because it resolves the entire plan consideration process, and that therefore the entire process is the "proceeding." A decision that does not resolve the entire plan consideration process—denial—is therefore not appealable.

Perhaps the Solicitor General's suggestion is that a separately appealable "proceeding" must coincide precisely with a particular "adversary proceeding" or "contested matter" under the Bankruptcy Rules. He does not, however, provide any support for such a suggestion. More broadly, it is of course quite common for the finality of a decision to depend on which way the decision goes. An order granting a motion for summary judgment is final; an order denying such a motion is not.

Bullard and the Solicitor General also contend that our rule creates an unfair asymmetry: If the bankruptcy court sustains an objection and denies confirmation, the debtor (always the plan proponent in Chapter 13) must go back to the drafting table and try again; but if the bankruptcy court overrules an objection and grants confirmation, a creditor can appeal without delay. But any asymmetry in this regard simply reflects the fact that confirmation allows the bankruptcy to go forward and alters the legal

relationships among the parties, while denial does not have such significant consequences.

Moreover, it is not clear that this asymmetry will always advantage creditors. Consider a creditor who strongly supports a proposed plan because it treats him well. If the bankruptcy court sustains an objection from another creditor—perhaps because the plan treats the first creditor too well—the first creditor might have as keen an interest in a prompt appeal as the debtor. And yet, under the rule we adopt, that creditor too would have to await further developments.

Bullard also raises a more practical objection. If denial orders are not final, he says, there will be no effective means of obtaining appellate review of the denied proposal. The debtor's only two options would be to seek or accept dismissal of his case and then appeal, or to propose an amended plan and appeal its confirmation.

The first option is not realistic, Bullard contends, because dismissal means the end of the automatic stay against creditors' collection efforts. Without the stay, the debtor might lose the very property at issue in the rejected plan. Even if a bankruptcy court agrees to maintain the stay pending appeal, the debtor is still risking his entire bankruptcy case on the appeal.

The second option is no better, says Bullard. An acceptable, confirmable alternative may not exist. Even if one does, its confirmation might have immediate and irreversible effects—such as the sale or transfer of property—and a court is unlikely to stay its execution. Moreover, it simply wastes time and money to place the debtor in the position of seeking approval of a plan he does not want.

All good points. We do not doubt that in many cases these options may be, as the court below put it, "unappealing." 752 F. 3d, at 487. But our litigation system has long accepted that certain burdensome rulings will be "only

imperfectly reparable" by the appellate process. *Digital Equipment Corp.* v. *Desktop Direct, Inc.*, 511 U. S. 863, 872 (1994). This prospect is made tolerable in part by our confidence that bankruptcy courts, like trial courts in ordinary litigation, rule correctly most of the time. And even when they slip, many of their errors—wrongly concluding, say, that a debtor should pay unsecured creditors $400 a month rather than $300—will not be of a sort that justifies the costs entailed by a system of universal immediate appeals.

Sometimes, of course, a question will be important enough that it should be addressed immediately. Bullard's case could well fit the bill: The confirmability of his hybrid plan presented a pure question of law that had divided bankruptcy courts in the First Circuit and would make a substantial financial difference to the parties. But there are several mechanisms for interlocutory review to address such cases. First, a district court or BAP can (as the BAP did in this case) grant leave to hear such an appeal. 28 U. S. C. §158(a)(3). A debtor who appeals to the district court and loses there can seek certification to the court of appeals under the general interlocutory appeals statute, §1292(b). See *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249 (1992).

Another interlocutory mechanism is provided in §158(d)(2). That provision allows a bankruptcy court, district court, BAP, or the parties acting jointly to certify a bankruptcy court's order to the court of appeals, which then has discretion to hear the matter. Unlike §1292(b), which permits certification only when three enumerated factors suggesting importance are all present, §158(d)(2) permits certification when any one of several such factors exists, a distinction that allows a broader range of interlocutory decisions to make their way to the courts of appeals. While discretionary review mechanisms such as these "do not provide relief in every case, they serve as

useful safety valves for promptly correcting serious errors" and addressing important legal questions. *Mohawk Industries*, 558 U. S., at 111 (internal quotation marks and brackets omitted).

Bullard maintains that interlocutory appeals are ineffective because lower courts have been too reticent in granting them. But Bullard did, after all, obtain one layer of interlocutory review when the BAP granted him leave to appeal under §158(a)(3). He also sought certification to the Court of Appeals under §158(d)(2), but the BAP denied his request for reasons that are not entirely clear. See App. to Pet. for Cert. 17a. The fact that Bullard was not able to obtain further merits review in the First Circuit in this particular instance does not undermine our expectation that lower courts will certify and accept interlocutory appeals from plan denials in appropriate cases.

\*　　\*　　\*

Because the Court of Appeals correctly held that the order denying confirmation was not final, its judgment is

*Affirmed.*