In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3093

IN THE MATTER OF:

JERRY DEAN FERGUSON and JULIE RENE FERGUSON,

*Debtors.*

APPEAL OF:

WEST CENTRAL FS, INC.

Appeal from the United States District Court
for the Central District of Illinois.
No. 14-1071 — **James E. Shadid**, *Chief Judge.*

ARGUED FEBRUARY 24, 2016 — DECIDED AUGUST 23, 2016

Before EASTERBROOK, ROVNER, and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Jerry and Julie Ferguson proposed a plan to repay the debts on their family farm under Chapter 12 of the Bankruptcy Code. This appeal concerns two of those debts: (a) a loan of $300,000 from First Community Bank, secured by a mortgage on the farm plus a lien on the Fergusons' farming equipment and crops, and (b)

a loan of $176,000 from West Central FS, secured by a junior lien on the equipment and crops.

The bankruptcy judge approved a sale of the equipment and crops, which yielded $238,000. The Bank, as the senior creditor, demanded those proceeds. But West Central offered an idea that would protect its own security interest: require the Bank to recoup its loan via the mortgage, which would allow West Central to be repaid from the sale of equipment and crops. Both secured creditors would be made whole. This remedy is called marshaling. It is not mentioned in the Bankruptcy Code, but the Supreme Court has said that bankruptcy courts should apply the doctrine according to state law. *Meyer v. United States*, 375 U.S. 233 (1963); see also *Butner v. United States*, 440 U.S. 48 (1979).

The Fergusons wanted to keep their farm—Chapter 12 provides for reorganization, not liquidation—which made Bankruptcy Judge Perkins reluctant to order foreclosure. Recovering from the farmland without foreclosure—that is, collecting monthly mortgage payments for years to come—would unnecessarily delay the Bank's recouping its loan, the judge wrote. 2011 Bankr. LEXIS 4581 (Bankr. C.D. Ill. Nov. 28, 2011). The judge rejected West Central's proposal and awarded the $238,000 to the Bank, though he noted that he might reconsider his decision if the farm were sold.

When the parties to the bankruptcy could not agree on a repayment plan, the judge converted the case to a liquidation under Chapter 7 and appointed a trustee. The trustee sold the farm for $411,000 and paid the Bank the balance of its claim. About $261,000 remains to be divvied up, and West Central wants to be treated as a secured creditor.

When a senior creditor can seek repayment from sources A and B, and a junior creditor from only B, marshaling under Illinois law allows a court to order the senior creditor to recover from A so long as that wouldn't harm the senior creditor. See, e.g., *Wyman v. Fort Dearborn National Bank*, 181 Ill. 279 (1899). The judge initially denied West Central's request because he thought that marshaling *would* have harmed the senior creditor.

After the bankruptcy was converted to a liquidation, West Central repeated its request for marshaling. That remedy would have been appropriate after all, it maintained, because the farm has been sold and the Bank repaid. Marshaling could be applied in retrospect by treating the Bank's recovery as having come from the sale of the farmland, and treating $238,000 of the money now in the estate as having come from the equipment and crops. Money is fungible, West Central reasoned, so why not use this accounting method to satisfy both secured creditors?

Though the Bank no longer has an interest in fighting marshaling (after all, it has been paid in full), the Internal Revenue Service does. The sale of equipment and crops generated big tax bills: over $200,000 that the Fergusons owe to the federal and Illinois treasuries. The tax collectors get priority among unsecured creditors under 11 U.S.C. §507(a)(8), which means that West Central's status—it would be a secured creditor with marshaling, or a general unsecured creditor without it—determines whether the taxes will be paid during the bankruptcy. Because the tax debts are not dischargeable, see 11 U.S.C. §523(a)(1)(A), the Fergusons also oppose marshaling—they aren't going to get any money from the sales, so they'd prefer satisfying the creditors with

the statutory right to haunt them after bankruptcy. The trustee, who represents the interests of unsecured creditors, also opposes marshaling.

The bankruptcy judge approved West Central's second request. 2013 Bankr. LEXIS 3386 (Bankr. C.D. Ill. Aug. 20, 2013). The judge wrote that he would have approved the original request had he known that the farm was going to be sold, and he saw no obstacle to applying the equitable remedy three years later. In a separate order he awarded West Central post-petition interest on its claim. 2014 Bankr. LEXIS 2676 (Bankr. C.D. Ill. June 18, 2014). As an oversecured creditor West Central is entitled to interest while the bankruptcy is pending, but even with interest it cannot receive more than the value of its collateral. 11 U.S.C. §506(b). Interest has taken its claim from $176,000 to $250,000, so the judge awarded West Central the value of the collateral—$238,000.

The United States, the trustee, and the Fergusons appealed to the district court, which reversed and remanded. 2015 U.S. Dist. LEXIS 121096 (C.D. Ill. Sept. 11, 2015). The court held that marshaling is proper only if two funds exist simultaneously. Because the money from one fund (the proceeds from the equipment and crops) had been paid out years ago, only the other fund (the proceeds from the land) still exists. Seeing no precedent in Illinois to support West Central's proposal, the district court told the bankruptcy judge to resolve the case without marshaling.

West Central has appealed, asking us to reinstate the bankruptcy court's decision. But first we must decide whether we have jurisdiction.

In bankruptcy cases this court has jurisdiction over ap-
peals from "final decisions, judgments, orders, and decrees"
of the district court. 28 U.S.C. §158(d)(1). (Subsection (d)(2)
gives us discretion to accept interlocutory appeals certified
as meeting certain prerequisites, but no one has requested
such an appeal.) It isn't enough, then, to say that the bank-
ruptcy court's order was final—we must consider the *district*
court's order. That inquiry may be straightforward when the
district court affirms a final order of the bankruptcy court;
not so when the district court remands a case, as it did here.
A remand is not final, and therefore is not appealable, unless
only ministerial acts remain for the bankruptcy court. See,
e.g., *In re Rockford Products Corp.*, 741 F.3d 730, 733 (7th Cir.
2013); *In re XMH Corp.*, 647 F.3d 690, 693–94 (7th Cir. 2011).
So we asked at oral argument: What will or must the bank-
ruptcy court do on remand? As far as we can tell—even with
the benefit of the parties' supplemental memoranda—no one
is sure.

The question eludes West Central. Its memo discusses
only the finality of the bankruptcy court's order. The joint
memo of the United States and the trustee also focuses on
the bankruptcy court's order. The Fergusons' memo is super-
ficially more helpful: it says that "only ministerial matters"
are left to be resolved. But it does not explain why, and when
a court needs facts it can ignore naked conclusions such as
this one.

Our review of the record, including the most recent pro-
posed distribution (filed February 5, 2014) leaves us unsure
what will happen on remand. We expect that the trustee will
propose allocating $26,000 in compensation and expenses for
herself and $208,000 to pay the tax collectors. That would

leave $27,000 for the unsecured creditors, whose allowed claims (including West Central's) total $246,000.

No unsecured creditor (other than West Central, which was treated as secured at the time) objected to the most re-cent proposed distribution before the deadline that the bank-ruptcy judge set. Arguments that could have been raised ear-lier are forfeited on remand, but it isn't surprising that no one objected to claims of the unsecured creditors—the estate was $149,000 short of having anything to distribute to them. Objecting to an unsecured claim would have been a futile exercise because it could not have changed the distribution. While the Bankruptcy Code and corresponding procedural rules mandate deadlines for some objections, see, e.g., *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992) (deadline to object to debtor's claimed exemptions under 11 U.S.C. §522(*l*) and Fed. R. Bankr. P. 4003(b)), they don't do so for objections to claims or to proposed distributions. See *Schwab v. Reilly*, 560 U.S. 770 (2010). A new proposal provides a new opportunity for the judge to consider objections. And no party has told us that there will be no objections.

The trustee suggested to the district judge that West Cen-tral would get about $17,000 without marshaling. By our cal-culations, West Central's *pro rata* share if there are no objec-tions will be more than $19,000. This difference doesn't look like a rounding error, though we don't know how the trustee got to $17,000. That's because she didn't take advantage of the opportunity we gave her to explain what the distribution will be on remand. Neither did any of the other parties. We therefore cannot treat the remand as a final decision.

The United States contends that West Central's request for marshaling is a "discrete dispute," appealable as soon as

it is decided without regard to ordinary notions of finality. Indeed, *every* "core proceeding" listed in 28 U.S.C. §157(b), the United States suggests, is a dispute that may be appealed piecemeal. This confuses *disputes* with *issues*.

The Supreme Court clarified those terms last year in *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686 (2015). The debtor in that case proposed a plan to repay his debts, but the bankruptcy court refused to confirm the proposal and told the debtor to come up with a new plan. The debtor appealed, noting that "confirmations of plans" are on the list of core proceedings, §157(b)(2)(L). When a judge rejects a plan, the debtor argued, that ends the "dispute" over whether to confirm that plan and is appealable.

The Supreme Court unanimously rejected that view. The dispute in *Bullard* was over how the debts would be repaid. Whether a particular plan would appropriately resolve that dispute is an issue. And deciding an issue without resolving the underlying dispute, the Court held, is not final.

Here the parties contest how the remaining $261,000 should be divided. West Central offered an argument that would have resolved that dispute, but the district court rejected it. The *issue* of marshaling has been finally resolved in the district court, but the *dispute*—Who gets how much money?—remains open. And according to *Bullard* it's the dispute that matters to appellate jurisdiction.

Imagine that West Central had made alternative arguments to resolve the estate's disbursement: the Bank's lien was invalid, or if it wasn't then the liens should be marshaled, or if not then the Bank's lien should be equitably subrogated. And imagine that the bankruptcy court had decided

these questions one at a time over the course of a few weeks. The United States believes that each decision would be a final resolution of a "discrete dispute" that could be appealed. The Solicitor General made just this argument in *Bullard*; the Court labeled it "implausible." 135 S. Ct. at 1694.

West Central makes hay of a case, *In re Bulk Petroleum Corp.*, 796 F.3d 667 (7th Cir. 2015), in which we identified a dispute narrower than the final distribution of the estate. But the parties to *Bulk Petroleum* had stipulated that there would be no further arguments between them once the appeal was resolved—the entire contested amount belonged either to the estate or the creditor, and the appeal would fix the parties' rights to the money. Cf. *Bullard*, 135 S. Ct. at 1692–93. There was no chance that the dispute would return to us on a successive appeal. Here the parties have had multiple chances to stipulate similarly. They haven't. That leaves us to wonder what they have in store for the bankruptcy court now.

Every litigant tells us that *Bullard* is inapplicable because it involved a filing under Chapter 13. But *Bullard* interprets §158, which sets out the rules of appellate jurisdiction for bankruptcy cases—*all* bankruptcy cases. The parties offer no argument that §158 bears a distinct meaning for each chapter of the Bankruptcy Code. *Bullard* interprets §158, which applies to this appeal no less than to a Chapter 13 proceeding.

This appeal is dismissed for want of jurisdiction.