RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0259p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

IN RE: CALIFORNIA PALMS ADDICTION RECOVERY CAMPUS, INC.,

*Debtor.*

─────────────────────────────────────────────

CALIFORNIA PALMS ADDICTION RECOVERY CAMPUS, INC.; SEBASTIAN RUCCI,

*Appellants,*

*v.*

ANDREW R. VARA, United States Trustee,

*Appellee.*

No. 23-3375

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Youngstown;
No. 4:22-cv-00812—Benita Y. Pearson, District Judge.

United States Bankruptcy Court for the Northern District of Ohio at Youngstown;
No. 4:22-bk-40065—John P. Gustafson, Bankruptcy Judge.

Decided and Filed:  November 29, 2023

Before:  WHITE, THAPAR, and BLOOMEKATZ, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:**  Sebastian Rucci, LAW OFFICE OF SEBASTIAN RUCCI, P.C., Huntington Beach, California, for Appellants.  Frederick Gaston Hall, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Lauren C. Schoenewald, UNITED STATES DEPARTMENT OF JUSTICE, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

THAPAR, Circuit Judge.  California Palms Addiction Recovery Campus was established to help people get a fresh start.  When it filed for bankruptcy, California Palms hoped for a fresh start of its own.  But the bankruptcy court determined that California Palms couldn't financially rehabilitate, so it converted the proceedings from chapter 11 bankruptcy to chapter 7.  We affirm.

I.

California Palms Addiction Recovery Campus operated a substance abuse treatment center in Ohio.  But California Palms and its sole owner Sebastian Rucci ran into legal and financial troubles.  Ohio revoked California Palms's operating license.  The U.S. Department of Justice (DOJ) seized nearly $600,000 from California Palms for alleged fraud.  And California Palms had an ongoing legal battle with a creditor, Pender, over its building lease.

On the brink of eviction, California Palms sued Ohio to recover its license, and California Palms and Rucci sued the DOJ to recover the seized assets.  California Palms also filed for chapter 11, subchapter V bankruptcy.  This would allow California Palms to try to turn the business around, but only if it could do so within an accelerated timeline.  *See generally* 11 U.S.C. §§ 1187–95.[1]  Its plan for reorganization depended almost entirely on the success of its pending lawsuits—but success was far from certain.  Concerned that the litigation would bleed the estate dry, the Trustee supervising the case urged the bankruptcy court to convert the matter to a proceeding under chapter 7 for liquidation.

The court put the Trustee's motion on hold to await developments in California Palms's other lawsuits.  But the court cautioned California Palms that it would take "very, very little" to convert to chapter 7 bankruptcy.  R. 125-1, Pg. ID 30.  Two weeks passed, but instead of good news, the lawsuit over the seized assets was put on hold while the DOJ pursued a criminal

---

[1]Although a small-business debtor generally has one hundred eighty days to file a reorganization when proceeding under chapter 11, 11 U.S.C. § 1121(e)(1), that timeline is shortened to ninety days when proceeding under subchapter V, *id.* § 1189(b).

indictment.  California Palms also failed to meet the deadline the bankruptcy court set to provide an accounting of post-petition bank transactions to the Trustee.  So the court scheduled a show-cause hearing, requiring California Palms to explain why the chapter 11 case should not be converted to a Chapter 7 proceeding.

Two days before the hearing, California Palms's attorney James Vitullo moved to withdraw as counsel.  (Vitullo withdrew because his prior relationship with Rucci and California Palms created a conflict of interest.)  *See* 11 U.S.C. §§ 327(a), 1107; Fed. R. Bankr. P. 2014.  Less than an hour before the hearing, Rucci—who is also a lawyer—filed an objection to the Trustee's motion to convert.  At the hearing, the court asked Rucci if he objected to Vitullo's withdrawal.  Rucci did not, nor did he request a continuance to get a new attorney.  The bankruptcy court granted Vitullo's motion.  Then, after making factual and legal findings, the bankruptcy court converted the proceedings to chapter 7.

It has continued to be a rocky road for California Palms.  Pender successfully evicted California Palms from the property where it operated its center.  An Ohio court upheld the revocation of its license.  A Sixth Circuit panel denied California Palms's petition for a writ of mandamus to return the seized $600,000.  And the district court affirmed the conversion order.  California Palms and Rucci now appeal the conversion order.[2]

II.

Before reaching the merits, we first resolve one jurisdictional issue:  finality.

Ordinarily, only "final decisions, judgments, orders, and decrees" are appealable.  28 U.S.C. § 158(d)(1).  A decision is typically considered final if it leaves nothing for a court to do but execute the judgment.  *In re Jackson Masonry, LLC*, 906 F.3d 494, 498 (6th Cir. 2018).  But bankruptcy is different.  *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015).  Bankruptcy often involves many distinct disputes involving a variety of rights and interests, so

---

[2]As the parties properly agree, California Palms has standing because losing its ability to operate is an adverse, pecuniary consequence directly resulting from conversion.  *Fidelity Bank v. M.M. Grp., Inc.*, 77 F.3d 880, 882 (6th Cir. 1996).  We therefore do not need to address Rucci's standing "because the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006).

courts take a broader view of finality.  *Jackson Masonry*, 906 F.3d at 498.  A final order in bankruptcy cases is one (1) entered in a "proceeding" and (2) "terminating" that proceeding.  *Id.* at 499.

Conversion from chapter 11 to chapter 7 meets both requirements.

First, conversion motions are resolved in proceedings.  A "proceeding" is a "discrete dispute" with specific procedural steps.  *Id.* at 500.  Chapter 7 conversion generally begins with a party's motion.  11 U.S.C. § 1112(b)(1); Fed. R. Bankr. P. 9014(a).  The court holds a hearing on that motion.  11 U.S.C. § 1112(b)(1).  And the court must determine whether there's statutorily defined cause to convert.  *Id.* § 1112(b)(4).  These are hallmarks of a proceeding.  *Jackson Masonry*, 906 F.3d at 500.

Second, granting a motion to convert also terminates the proceeding.  Proceedings are "terminate[d]" when the "status quo" is "alter[ed]" and the "rights and obligations of the parties" are "fixe[d]."  *Bullard*, 575 U.S. at 502.  Here, orders to convert eliminate all rights and obligations stemming from chapter 11 proceedings.  Such orders also bear "significant and irreparable" consequences, which is indicative of finality.  *Jackson Masonry*, 906 F.3d at 502.  Namely, the debtor loses control of the estate and the opportunity to reorganize.

Thus, an order granting a motion to convert from chapter 11 to chapter 7 is a final, appealable order.  Our sister circuits who have considered the issue agree.[3]

### III.

The bankruptcy court found cause to convert and determined conversion was in the best interest of the creditors and estate.  We review both decisions for abuse of discretion.  *In re Mitan*, 573 F.3d 237, 247 (6th Cir. 2009).

---

[3]*See In re Rosson*, 545 F.3d 764, 770 (9th Cir. 2008); *In re USA Baby, Inc.*, 674 F.3d 882, 883 (7th Cir. 2012); *In re Fleurantin*, 420 F. App'x 194, 196 (3d Cir. 2011) (per curiam).

A.

Converting a case from a chapter 11 reorganization to a chapter 7 liquidation usually means the underlying business ceases to operate.  *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 455–56 (2017) (comparing proceedings under chapters 7 and 11).  Instead, the business shuts down, and a trustee distributes its remaining assets to the entity's creditors.  *Id.*  To convert a chapter 11 case to chapter 7, a court must find cause.  11 U.S.C. § 1112(b)(1).  The Bankruptcy Code provides a list of sufficient causes.  *Id.* § 1112(b)(4).  The bankruptcy court found that four applied:  (1) no likelihood of rehabilitation, (2) gross mismanagement, (3) failure to comply with the Trustee's request, and (4) failure to comply with a court order.  We need only agree with one of those causes to affirm.

We begin and end with the first.  Cause exists under this factor when there's a "substantial or continuing loss to or diminution of the estate" without "a reasonable likelihood of rehabilitation."  *Id.* § 1112(b)(4)(A).  The bankruptcy court didn't abuse its discretion by finding that California Palms qualified.

First, California Palms faced substantial and continuing losses.  It wasn't currently operating, so it had no income.  It had limited assets.  And its ongoing litigation continued to drain those assets.  No asset growth plus ongoing costs equals continuing loss.  *Cf. Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (8th Cir. 2004) (holding that any negative cash flow satisfies this prong if the debtor isn't operating); 7 Collier on Bankruptcy ¶ 1112.04 (16th ed. 2023).  Indeed, as the bankruptcy court observed, the estate was a "melting ice cube."  Bankr. R. 125-1, Pg. ID 27.

Second, California Palms wasn't reasonably likely to rehabilitate.  Without a license, California Palms couldn't return to business.  And a significant portion of its assets had been seized by the DOJ.  So rehabilitation depended on pending litigation.  But the DOJ lawsuit had been put on pause until the DOJ's fraud investigation into California Palms concluded.  Given the "short deadlines" imposed for subchapter V cases, the bankruptcy court held that Rucci would not be able to complete his "litigation-based rehabilitation" "in a reasonable amount of time."  Bankr. R. 125-2, Pg. ID 14, 28.

Taking the substantial and continuing losses and unlikelihood of rehabilitation together, the court did not abuse its discretion in finding cause to convert.

## B.

Upon finding cause, a bankruptcy court in a subchapter V case can either (1) convert to chapter 7 or (2) dismiss the proceeding.  11 U.S.C. §§ 1112(b)(1), 1181(a).  The court must choose the option that's in the best interests of the creditors and estate.  *Id.* § 1112(b)(1).

California Palms claims the court failed to consider its interests.  But the bankruptcy court weighed the interests of all parties in deciding whether to dismiss or convert the case.  The court acknowledged that the possibility of California Palms recovering assets from litigation would decrease under chapter 7.  But the court also observed that the litigation was dragging on, and the estate's resources were steadily diminishing in the meantime.  California Palms's failure to meet deadlines and the court's concerns about mismanagement suggested California Palms could not be counted on to protect the estate for the creditors.  Moreover, California Palms's largest creditor, Pender, supported conversion.  The court didn't abuse its discretion by ordering conversion in these circumstances.

## C.

California Palms offers three responses.  None succeeds.

First, it argues that the bankruptcy court did not explicitly find that there was a "continuing loss" to the estate.  True, the court didn't use that specific phrase.  But the lack of "magic words" isn't an abuse of discretion.  "[F]indings are to be liberally construed in support of a judgment, even if the findings are not as explicit or detailed as might be desired."  *In re Fordu*, 201 F.3d 693, 710 (6th Cir. 1999).  "[T]he nature of the case" dictates the necessary "detail and exactness," and the record must "give an appellate court a clear understanding of the basis" for the bankruptcy court's decision.  *Id.*  Here, the court found that the estate's assets would be "lost" if chapter 11 proceedings continued.  Bankr. R. 125-2, Pg. ID 16.  That's enough.

Second, California Palms argues the bankruptcy court didn't have enough evidence to find cause because the motion to convert came too early in the proceeding. But, as we've explained, the bankruptcy court had more than enough evidence before it when it found cause to convert.

Third, California Palms contends that the court ignored the purpose of subchapter V. To be sure, subchapter V can provide greater flexibility and opportunity for small businesses to reorganize. *See generally* 11 U.S.C. §§ 1181–95. Even so, the statutory text dictates when courts should instead convert from subchapter V to chapter 7. *Id.* § 1112(b); *cf. Carcieri v. Salazar*, 555 U.S. 379, 392 (2009). If Congress wanted to allow businesses to stay in chapter 11 when they had no possibility of rehabilitation, it could've exempted subchapter V from conversion—just as it did for other chapter 11 requirements. *See* 11 U.S.C. § 1181(a). But it didn't, so we can't.

IV.

California Palms also argues that the bankruptcy court violated various procedural requirements. But we reverse a bankruptcy decision on due process grounds only if the error was prejudicial. That is, California Palms must show the alleged violations produced a "substantially different outcome." *Graham v. Mukasey*, 519 F.3d 546, 549–50 (6th Cir. 2008). California Palms has not.

First, California Palms argues it wasn't given sufficient notice of the bankruptcy court's hearing on April 5, 2023.[4] Before a conversion hearing, parties are supposed to get at least seven days' notice. Fed. R. Bankr. P. 9006(d). Although the bankruptcy court only gave five, this procedural flaw didn't prejudice California Palms. For one, California Palms didn't object to the hearing date. Nor did it ask the court for more time to prepare. Moreover, the April 5 hearing was merely a continuation of a March 15 hearing on the Trustee's motion to convert. And California Palms doesn't even suggest those two extra days would've changed the conversion proceeding's outcome. For good reason: it had known for forty-six days—from when the

---

[4]California Palms focuses most of its due-process arguments on the failure-to-comply bases for cause. But because we affirm the bankruptcy court's cause finding on other grounds, we need not consider those due-process challenges.

Trustee filed the motion to convert—that the bankruptcy court was considering conversion. We have no reason to believe the difference between forty-six and forty-eight days was anything but harmless in this case.

Next, California Palms criticizes the bankruptcy court's decision to put the conversion motion on hold. But California Palms doesn't explain how this violates any rule—procedural or otherwise. Courts regularly put motions on hold to await results in other litigation. *See, e.g.*, *Pratt v. Ventas, Inc.*, 365 F.3d 514, 518 (6th Cir. 2004); *In re Martin*, 542 B.R. 199, 201 (B.A.P. 6th Cir. 2015). And it made sense for the court to do so here: Rucci suggested to the court that there'd soon be developments in California Palms's related litigation. If anything, the court's caution benefited California Palms—the court could've chosen to convert at the earlier hearing instead. Thus, this decision was appropriate.

Finally, California Palms points out it didn't have an attorney during the second conversion hearing. *See Bass v. Leatherwood*, 788 F.3d 228, 230 (6th Cir. 2015). True, the bankruptcy court dismissed Vitullo before addressing the motion to convert. But for this argument to succeed, California Palms must show prejudice. *Sours v. General Motors Corp.*, 717 F.2d 1511, 1521 (6th Cir. 1980). California Palms fails to even argue that the presence of an additional attorney would have altered the outcome. As an initial matter, California Palms did have representation in preparing its defense, as the district court did not grant Vitullo's motion to withdraw until the hearing started. And Rucci, who also appeared at the hearing, didn't object to the withdrawal, even when specifically asked by the bankruptcy court. Nor did he request a continuance to get a new attorney. Instead, Rucci, who was an attorney, made arguments that adequately protected California Palms's interests. First, as sole shareholder, Rucci knows California Palms's operations and finances better than anyone else. Second, Rucci, who was already involved as an interested party, had briefed and prepared arguments for the proceeding. Third, by being present at the hearing, he was able to functionally, even if not technically, represent California Palms. The bankruptcy court treated him as a suitable representative—and no party objected to Rucci acting as a stand-in. And on appeal, California Palms proffers no additional arguments it would have made on the § 1112(b)(4)(A) grounds for conversion, or steps it would have taken in the bankruptcy court regarding conversion on these grounds, if it

had had an attorney at the time. To be sure, California Palms lacking an official attorney is a unique situation that shouldn't be repeated. But we cannot imagine how, given that the district court had ample evidence to grant the Trustee's motion to convert, California Palms suffered prejudice. Any defect in the conversion hearing was harmless.

\* \* \*

The bankruptcy court did not abuse its discretion in converting California Palms's chapter 11 case to chapter 7. We affirm.