NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0139n.06

Case No. 23-5407

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DAMON SEAN BELLIS,

    Defendant-Appellant.

</td><td>

)
)
)
)
)
)
)
)
)
)

</td><td>

**FILED**
Mar 21, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

</td></tr>
</table>

Before: KETHLEDGE, BUSH, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** A jury convicted Damon Bellis of assaulting a federal officer. In calculating Bellis's Sentencing Guidelines range, the district court increased his base offense level under U.S.S.G. § 2A2.2(b)(3)(A) because an officer suffered a "[b]odily [i]njury" during the confrontation with Bellis. The court then sentenced Bellis to 60 months' imprisonment. On appeal, Bellis contends that his sentencing range was improperly inflated by application of the bodily injury provision. To Bellis's mind, that provision is inapplicable because he caused, at most, only superficial injuries. Seeing no error in the district court proceedings, we affirm.

I.

Equipped with an arrest warrant, federal officers Brandon Post and Jarod Pugh arrived at a home where they believed they would find the warrant's target, Damon Bellis. Pugh stationed

himself behind the residence, while Post was in front. When Bellis exited the front door, Post announced his presence. Bellis walked towards Post, drawing a long silver fishing spear tip from his jacket. The two engaged. Pugh then entered the fray, restraining Bellis and dislodging the spear. The melee ended with Post handcuffing Bellis. During the confrontation, Pugh suffered minor injuries, including a bloody lip.

Following an indictment and subsequent trial, Bellis was found guilty of assault on a federal officer, in violation of 18 U.S.C. § 111(a)(1) and (b). His case then moved to the sentencing phase. Invoking U.S.S.G. § 2A2.2(b)(3)(A), the probation office suggested a three-level enhancement to Bellis's base offense level due to Pugh's "[b]odily [i]njur[ies]." At sentencing, the district court referenced photos depicting Pugh's injuries and concluded that they qualified as bodily injuries for purposes of the enhancement. But noting that the injuries were not severe and that Pugh did not seek medical attention, the court varied downward and imposed only a two-level increase. The district court sentenced Bellis to 60 months' imprisonment, followed by three years of supervised release. Bellis lodged no objections to his sentence when the opportunity arose. But he did later appeal his sentence in a timely manner.

## II.

On appeal, Bellis argues that the district court erred in imposing a "[b]odily [i]njury" enhancement. *See* U.S.S.G. § 2A2.2(b)(3)(A). As Bellis did not object to his sentence following its imposition, we review his challenge for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). As a result, Bellis must demonstrate the existence of a clear or obvious error affecting his substantial rights and "the fairness, integrity, or public reputation of the judicial

proceedings." *Id.* (quotation omitted). "[O]nly in exceptional circumstances" do such errors exist. *Id*. (quotation omitted).

Bellis's case does not present such circumstances, as we discern no error, plain or otherwise. The Guidelines provision at issue instructs the district court to increase by three a defendant's base offense level for aggravated assault if a victim suffers a "[b]odily [i]njury." U.S.S.G. § 2A2.2(b)(3)(A). Pugh's bloodied lip fits the bill. As the term "bodily injury" is not defined in the Guideline itself, we look to dictionaries to supply the term's ordinary meaning. *United States v. Riccardi*, 989 F.3d 476, 486 (6th Cir. 2021). *Black's Law Dictionary* defines the phrase "bodily injury" as "[p]hysical damage to a person's body." *Injury*, *Black's Law Dictionary* (11th ed. 2019). Other dictionaries are in accord. *See, e.g.*, *Bodily*, *Oxford English Dictionary* (Online ed. 2024) ("Of or belonging to the body or physical nature of man."); *Bodily*, *Merriam-Webster* (Online ed. 2024) ("[O]f or relating to the body"); *Injury*, *Oxford English Dictionary* (Online ed. 2024) ("Hurt or loss caused to or sustained by a person or thing; harm, detriment, damage."); *Injury*, *Merriam-Webster* (Online ed. 2024) ("[H]urt, damage, or loss sustained"). From this collection of sources, a plain reading of the phrase "bodily injury" equates the term to a physical harm to one's body, an understanding that captures the bloodied lip sustained by Pugh.

Consistent with this understanding, we have upheld application of the enhancement for injuries of similar magnitude. We did so under a nearly identical provision of the Guidelines where the defendant's actions caused his victim to experience a "'goose egg' lump on his head and scrapes and bruises on his arm and shoulder." *United States v. Jackson*, 918 F.3d 467, 487 (6th Cir. 2019). We upheld application of a similar bodily injury enhancement where a beating resulted in an officer suffering "numerous abrasions, the hyperextension of his shoulder, and soreness in his knees and elbow for two weeks." *United States v. Muhammad*, 948 F.2d 1449, 1451, 1456

(6th Cir. 1991); *see also United States v. Davenport*, 30 F. App'x 338, 339–40 (6th Cir. 2002) (order) (applying a bodily injury enhancement when a bank teller struck on the head with a gun suffered a headache). And we did so under the same Guideline provision here where the victim was "bleeding from the fingers" and suffered "marks on the neck" as well as "swelling of the face." *United States v. Milen*, No.16-6574, 2017 WL 4863120, at *3 (6th Cir. Aug. 23, 2017) (order).

As a matter of degree, we see little difference between these injuries and Pugh's bleeding lip. True, as Bellis notes, Pugh's injuries were not especially serious nor long-lasting. But it is not enough for Bellis simply to say that "the injury just wasn't serious." *Davenport*, 30 F. App'x at 340. Serious injury is not required. Confirming as much, with a more serious injury, a different (and even greater) enhancement applies. *See* U.S.S.G. § 2A2.2(b)(3)(B) (calling for a five-level increase when a bodily injury is "[s]erious"). As "[c]ourts presume that the same words in the same statute mean the same thing," *In re Jackson Masonry, LLC*, 906 F.3d 494, 501 (6th Cir. 2018), we read the Commission's use of the term "serious" in one place to exclude a seriousness requirement where that term is not used. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 25 (2012) (explaining that a corollary of the presumption of consistent usage is the principle that "a material variation in terms suggests a variation in meaning"). So we find no error, plain or otherwise, in imposing the lesser enhancement in this case.

Drawing our attention to the Guidelines commentary, Bellis urges a different approach. The commentary to § 2A2.2, he notes, explains that the definition of "bodily injury" is found in the application note to § 1B1.1. U.S.S.G. § 2A2.2 cmt. n.1. There, "bodily injury" is defined as "any significant injury; *e.g.*, an injury that is painful and obvious, or is of a type for which medical

attention ordinarily would be sought." U.S.S.G. § 1B1.1 cmt. n.1(B). Bellis contends that Pugh's injuries do not meet this definition.

Bellis's conclusion leaps over important steps in our interpretive process. As a starting point, we do not look to the commentary reflexively, as Bellis would have us do. *Riccardi*, 989 F.3d at 485; *see also United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (en banc) (per curiam) (explaining that the Guidelines "commentary has no independent legal force"). Instead, whether to defer to the Guidelines commentary at sentencing is answered by looking to the interpretive rules announced in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). *Riccardi*, 989 F.3d at 485; *United States v. Phillips*, 54 F.4th 374, 379 (6th Cir. 2022). Set outside the context of the Sentencing Guidelines, *Kisor* considered, more broadly, how courts should interpret federal regulations when an agency regulation is accompanied by the agency's own interpretation. *Kisor*, 139 S. Ct. at 2408. Before deferring to that interpretation, *Kisor* explained, a court must find that the regulation is "genuinely ambiguous." *Id*. at 2414. If there is no deep ambiguity in the regulation's terms, as informed by "the standard tools of interpretation," *id*., the terms' plain meaning carries the day.

We follow this same approach when deciding whether to defer to the Guidelines commentary. *Riccardi*, 989 F.3d at 486. And, as already explained, we see no ambiguity in the Guideline's phrase "bodily injury," one that reflects a straightforward reading. Therefore, we need not resort to any gloss to those terms provided in the commentary.

Finally, Bellis argues that it is unclear whether he even inflicted the injuries experienced by Pugh. This framing, however, minimizes the enhancement's reach. For purposes of the enhancement, it is fair game to consider any injury that was reasonably foreseeable as a result of Bellis's conduct, even those injuries not directly produced by a blow from him. Consider *United*

*States v. Fitzwater*, 896 F.2d 1009 (6th Cir. 1990). There, we upheld a bodily injury enhancement when a bank employee hit her head on a drawer while moving to the floor during a robbery—even when, at the time of the injury, the defendant was outside the bank. *Id*. at 1012. Such harm, we said, was a reasonably foreseeable outcome of the crime, and thus it was included within the enhancement's scope. *Id*. So too here. It was reasonably foreseeable that assaulting an officer with a fishing spear would result in physical injury to the officer. The district court justifiably increased Bellis's offense level as a result.

*     *     *     *     *

We affirm the judgment of the district court.