**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2817
_____

ALLENTOWN VICTORY CHURCH, a Pennsylvania not for profit corporation,
Appellant

v.

CITY OF ALLENTOWN, PENNSYLVANIA, a Pennsylvania municipal corporation;
ZONING HEARING BOARD OF THE CITY OF ALLENTOWN, PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-21-cv-03021)
District Judge: Honorable John M. Gallagher
_____

Submitted Under Third Circuit L.A.R. 34.1(a) on December 12, 2023

Before: BIBAS, PORTER, and FREEMAN, *Circuit Judges*

(Filed: July 17, 2024)

_____

OPINION*
_____

PORTER, *Circuit Judge*.

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

Allentown's Zoning Hearing Board (the "Board") denied Allentown Victory Church's ("AVC") appeal for a zoning variance. AVC argues that the Board's decision violated the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Because the administrative record does not demonstrate discrimination on the basis of disability or a substantial burden on religion, we will affirm.

I

AVC operates a "Recovery Victory Home" (the "Home") to provide a "Christ-Centered housing program for men seeking recovery who were coming out of jail or a substance abuse treatment facility." Opening Br. at 4. The Home's voluntary, transitional housing is designed to help men who have been successfully discharged from a rehabilitation program reenter society. The Home provides mandatory, faith-based programming for its residents. Its residents arrive from substance abuse treatment facilities, were homeless, or were released from jail or a work release program.

In April 2019, the city of Allentown ("the City") issued a Notice of Violation classifying the Home as a "Drug and Alcohol Rehabilitation Facility" that was operating without the proper permit in a "High Density Residential District." The City ordered AVC to cease and desist operation of the Home or file an appeal with the Board. AVC complied, filing an appeal requesting that the Home be treated as a "Large Group Home" with a reasonable accommodation to house eighteen rather than twelve residents. In the alternative, AVC applied for a zoning variance so that the Home would instead be classified as an "Institution for Children, the Aged and the Handicapped" ("Institution").

Both the Group Home and Institution classifications include residents with disabilities. AVC argued that its Home could not keep its doors open without either a Large Group Home designation or variance because the facility needed at least fifteen residents paying $135 weekly. This portion of the appeal invoked Article 1307.03(C) of the City's codified ordinances, which permits modification of zoning requirements if "necessary to provide a 'reasonable accommodation' required by the Americans with Disabilities Act and/or the Federal Fair Housing Act." App. 6.

The Board held two zoning hearings to resolve AVC's appeal. At the first in June 2019, the Board raised several objections. First, the Board questioned the propriety of AVC's residential lease if it were in fact a drug treatment facility. Second, it noted that AVC had not submitted required documents indicating that it had permission of the property owner to operate the Home.

Facing these objections, AVC changed tack. At the Board's suggestion, it withdrew its appeal and then applied for a variance to reclassify the Home as an "Institution for Children, the Aged, or the Handicapped." It also reapplied for consideration as a Large Group Home. Plus, AVC again requested permission to house more than twelve residents under Article 1307.03(C)'s "reasonable accommodation" provision. But this time AVC sought permission to house only fifteen, rather than eighteen, residents. At the second hearing, the Board denied both requests. First, the Board found that classifying the Home as an Institution was unwarranted because AVC had failed to show unnecessary hardship. Next, the Board rejected classifying the Home as a Large Group Home. The Board explained that while Large Group Homes were

3

permitted as a special exception in the district where the Home was located, the zoning ordinance definition of "Group Home specifically excludes the uses of halfway houses or similar uses." App. 257 (internal quotation marks and ellipsis omitted). The Board then concluded that the Home's mandatory programming for its residents was "for the purpose of . . . counseling and therapy," which is "the province of halfway houses" rather than Group Homes. *Id.* So the Home could not qualify for a Large Group Home designation.

Despite the Board's decision, in October 2019 AVC entered a new lease for the Home through 2024. It then sued the Board, alleging unlawful discrimination under the Fair Housing Act, 42 U.S.C. § 3601, the Americans with Disabilities Act, 42 U.S.C. § 12101, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc.

The District Court granted summary judgment to the City. First, it held that the City's zoning ordinances do not either facially or as applied discriminate against handicapped persons. Second, the Court concluded that AVC failed to show that the zoning ordinances disparately impacted the disabled. Third, it held that AVC's reasonable accommodation claim failed because there was no evidence that an increase in the number of residents was a necessary accommodation. Fourth and finally, the Court concluded that AVC's RLUIPA claim failed because the Board's decision did not place a substantial burden on the church's practice of religion.

AVC appealed.[1]

---

[1] We have jurisdiction under 28 U.S.C. § 1291 because a district court's grant of summary judgment is a final order. *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015).

4

II

We review a grant or denial of summary judgment de novo. *Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 708 (3d Cir. 2019) (citation omitted). Summary judgment is appropriate only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And "[a] fact is material if it might affect the outcome of the suit under the governing law." *Id.* (internal quotation marks omitted) (quoting *Anderson*, 477 U.S. at 248). We view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014).

A

The District Court properly granted summary judgment to the City. AVC's FHA and ADA claims are either ill-developed or unsupported by the administrative record.[2] AVC's RLUIPA claim fails for the same reasons.

1

The FHA "prohibits housing discrimination on the basis of, *inter alia*, race, gender, and national origin—and, following the adoption of the [Fair Housing

---

[2] AVC does not distinguish between its FHA and ADA claims so we will, like the District Court, address them in tandem.

5

Amendments Act] in 1988, individuals with disabilities." *431 E. Palisade Ave. Real Est., LLC v. City of Englewood*, 977 F.3d 277, 283 (3d Cir. 2020) (internal quotation marks omitted) (quoted source omitted). Similarly, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. And this statutory command "constitutes a general prohibition against discrimination by public entities, regardless of activity." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 301 (3d Cir. 2007) (citation omitted).

The Fair Housing Amendments Act ("FHAA") defines "handicap" as "a physical or mental impairment which substantially limits one or more of [a] person's major life activities," or "a record of having such an impairment," or "being regarded as having such an impairment[.]" 42 U.S.C. § 3602(h). We have observed that "at least two other courts have held that recovering alcoholics and drug addicts are handicapped, so long as they are not currently using illegal drugs." *Lakeside Resort Enters., LP v. Bd. of Supervisors of Palmyra Twp.*, 455 F.3d 154, 156 n.5 (3d Cir. 2006) (citations omitted).[3] The parties do not dispute this issue. For this case, we assume without deciding that alcoholism and drug addiction are disabilities.

We have explained that "[p]laintiffs may bring three different types of claims against municipal land use authorities under the FHAA: (1) intentional discrimination

---

[3] But these disabilities do not include "current, illegal use of or addiction to a controlled substance[.]" 42 U.S.C. § 3602(h).

claims (also called disparate treatment claims); (2) disparate impact claims; and (3) claims that the municipal authority failed to 'make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped] person[s] [an] equal opportunity to use and enjoy a dwelling.'" *Lapid-Laurel, LLC v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 448 n.3 (3d Cir. 2002) (alterations in original) (citation omitted) (quoting 42 U.S.C. § 3604(f)(3)(B)). AVC advanced all three theories below, but all fail for the same reasons—they lack evidentiary support and are inadequately developed.

a

"Generally, to prevail on a disparate treatment claim, a plaintiff must demonstrate that some discriminatory purpose was a 'motivating factor' behind the challenged action." *431 E. Palisade Ave.*, 977 F.3d at 284 (internal quotation marks omitted) (quoted source omitted). And "[t]he discriminatory purpose need not be malicious or invidious, nor need it figure in [sic] 'solely, primarily, or even predominantly' into the motivation behind the challenged action." *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 177 (3d Cir. 2005) (quoted source omitted). Instead, plaintiffs are "only required to show that a protected characteristic played a role in the defendant's decision to treat [them] differently." *Id.* (internal quotation marks omitted) (quoted source omitted).

AVC advances two disparate treatment arguments. First, AVC argues that the Institution classification is facially discriminatory.[4],[5] But AVC does not develop this argument. Instead, it only offers a conclusory assertion that the District Court did not properly conduct the facial discrimination inquiry. "[W]e have consistently refused to consider ill-developed arguments" like what AVC offers here. *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017) (citation omitted) (collecting cases); *cf.* Fed. R. App. P. 28(a)(8)(A). AVC's facial discrimination argument is therefore forfeited. *Id.*

Second, AVC argues that the disabilities of its Home's residents were a motivating factor in the Board's denial of its variance application. It asserts that the Board shifted between several potential classifications for the home as part of a "whack a mole" approach. Opening Br. at 30. This approach purportedly reveals that the Board's decisions were based on either the disabilities of the Home's residents or community opposition to the Home rather than the permissible number of residents.

---

[4] AVC argues on appeal that it did not challenge the zoning ordinances as facially discriminatory below and so the issue was not adequately briefed. Even if we were to discount the District Court's thorough explanation of why it considered this issue squarely presented by the record, the District Court could have properly granted summary judgment on this issue sua sponte. *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 219 (3d Cir. 2004) (recognizing an exception to Rule 56's notice requirement where "(1) the point at issue is purely legal; (2) the record was fully developed, and (3) the failure to give notice does not prejudice the party").

[5] If AVC can show that the City's zoning ordinances facially discriminate on the basis of disability, it does not need to show that the Board acted with malice or discriminatory animus. *See Wind Gap*, 421 F.3d at 177. Or, "[p]ut another way, direct evidence of intent is supplied by the policy itself." *Hassan v. City of New York*, 804 F.3d 277, 295 (3d Cir. 2015) (internal quotation marks omitted) (quoted source omitted).

Viewed in the light most favorable to AVC, this reading of the administrative record is without merit. AVC cites portions of the zoning hearings during which board members questioned whether members of the Home would qualify as disabled within the meaning of the Institution classification. Read in context, the board members were merely investigating which zoning classification would be most appropriate. Board members, by asking questions about the number of residents, type of programming offered, and disability status were determining whether the Home would qualify for either classification on those bases. The Board could not have performed its screening function without some form of these questions, and AVC suggests no alternative now.[6] Viewed in the light most favorable to it, AVC lacks evidence that a discriminatory purpose was a motivating factor in the Board's decision. So AVC's disparate treatment claim fails.

b

"In order to make a prima facie case of disparate impact under the FHAA, the plaintiff must show that the [t]ownship's action had a greater adverse impact on the protected group . . . than on others." *Lapid-Laurel*, 284 F.3d at 466–67. If AVC succeeds in making a prima facie case, "then the burden shifts to the [Board] to show that it had a legitimate, non-discriminatory reason for the action and that no less discriminatory alternatives were available." *Id.* at 467 (citation omitted); *see also Texas Dep't. of Hous.*

---

[6]AVC also points to the "deliberate indifference" of the Board towards the FHAA but, as the District Court noted below, cites no case law applying that doctrine to zoning cases. We decline to make AVC's argument for it. *See Barna*, 877 F.3d at 145; *see also* Fed. R. App. P. 28(a)(8)(A).

*& Cmty. Affs. v. Inclusive Cmtys Project, Inc.*, 576 U.S. 519, 545–46 (2015) (holding that disparate impact claims are cognizable under the FHA).

While "[i]ntent need not be proven . . . in a disparate impact claim[,] . . . . the improper basis must be shown to be at the heart of the classification or conduct." *Wind Gap*, 421 F.3d at 178 n.7 (internal quotation marks omitted). We have explained in analogous contexts that "[t]ypically, a disparate impact is demonstrated by statistics[.]" *Mount Holly Gardens Citizens in Action, Inc. v. Twp. of Mt. Holly*, 658 F.3d 375, 382 (3d Cir. 2011) (internal quotation marks omitted) (quoted source omitted). However, "[n]o single test controls in measuring disparate impact[.]" *Id.* (internal quotation marks omitted) (quoted source omitted).

Here, AVC argues that the zoning ordinance's definition of "Institution or Residence for Children, the Aged, or the Handicapped" discriminates against the disabled. On its telling, the zoning ordinance discriminates by allowing groups of up to thirty persons under some classifications in "High Density Residential Districts" but capping an Institution at just twelve persons. AVC argues that this difference will "predictably result in making housing unavailable" for the disabled. Opening Br. at 41. AVC does not cite a single decision of this Court to support its argument. Nor does it point to statistical evidence or anything in the record to support its conclusory assertion.

While there is "no single test" for assessing disparate impact, there must be something to test in the first place. *Mt. Holly*, 658 F.3d at 382 (internal quotation marks omitted) (quoted source omitted). Like its facial discrimination argument, AVC's disparate

10

impact claim falls far short of our briefing requirements. Fed. R. App. P. 28(a)(8)(A). So this argument is "ill-developed" and is therefore forfeited. *Barna*, 877 F.3d at 145.

c

Under the FHAA, unlawful discrimination includes a "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" 42 U.S.C. § 3604(f)(3)(B). We have applied this provision to the decisions of local land use boards. *Lapid-Laurel*, 284 F.3d at 450. The reasonable accommodation inquiry has three factors—whether the requested accommodation was "(1) reasonable and (2) necessary to (3) afford handicapped persons an equal opportunity to use and enjoy housing." *Id.* at 457 (internal quotation marks omitted) (quoting *Bryant Woods Inn, Inc. v. Howard Cnty., Md.*, 124 F.3d 597, 603 (4th Cir. 1997)); *see also Vorchhiemer v. Phila. Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018) ("a plaintiff can state a claim by pleading all three elements").

We use a two-step burden-shifting framework for this analysis. First, "the plaintiff bears the initial burden of showing that its requested accommodations are necessary to afford [handicapped] person[s] [an] equal opportunity to use and enjoy a dwelling[.]" *Lapid-Laurel*, 284 F.3d at 446 (alterations in original) (internal quotation marks omitted) (quoting 42 U.S.C. § 3604(f)(3)(B)). If the plaintiff meets its initial burden, "the burden shifts to the defendant to show that the requested accommodations are unreasonable." *Id.* We limit our review of an FHAA reasonable accommodation in this context "to the materials that were presented to the local land use board, except in circumstances where

11

the board prevents applicants from presenting sufficient information." *Lapid-Laurel*, 284 F.3d at 450.

AVC argues that it was prevented from presenting sufficient information to establish the economic necessity of obtaining a variance, but this claim is belied by the administrative record. Other than asserting that the Board "would not hear" evidence of financial necessity on appeal, AVC cannot point to any specific conduct of Board members in the record to support its claim. Opening Br. at 21. On the contrary, the record indicates that AVC's counsel explained "it would not be economically feasible" to operate the home with only twelve residents. App. 208. Plus, AVC submitted depositions that stressed the dire financial situation of the Home. Rejection of an argument is not the same as disallowing evidence.

With the benefit of the evidence it did present, AVC fails to carry its initial burden under *Lapid-Laurel*. Assuming arguendo that AVC could show that its accommodation request was "reasonable" and would "afford handicapped persons an equal opportunity to use and enjoy housing," AVC has not shown that its accommodation is "necessary." *Lapid-Laurel*, 284 F.3d at 457. The FHAA's "necessity element requires that an accommodation be essential, not just preferable." *Vorchheimer*, 903 F.3d at 107. Necessity is thus "a high standard." *Id.* at 105. In *Lapid-Laurel*, we found plaintiff's expert testimony insufficient to show necessity because the expert did not testify that "it would be economically infeasible

to operate a smaller facility." *Lapid-Laurel*, 284 F.3d at 461. Rather, there the expert merely testified that larger facilities "seem to work very well." *Id.*

Here, AVC explicitly claimed economic infeasibility through counsel and the testimony of the Home's pastor. But AVC offers nothing more to support its assertion. AVC did not provide any license requirements, affidavits related to financial losses, financial data, or other evidence that would demonstrate a variance increasing the number of residents from twelve to eighteen is "essential" rather than "just preferable." *Vorchheimer*, 903 F.3d at 107. These types of evidence are neither necessary nor sufficient in every case. But the District Court correctly concluded that the "mere scintilla of evidence" presented by AVC is too little too late to rescue AVC's reasonable accommodation claim. App. 21. AVC has thus not shown that a variance is "required to make [the Home] financially viable or medically effective." *Lapid-Laurel*, 284 F.3d at 461. So its reasonable accommodation claim fails.

2

AVC's final claim is that the City violated RLUIPA. The statute provides that:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—(A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1) (line breaks omitted). This proscription against substantial burdens on religious exercise applies to "system[s] of land use regulations." § 2000cc(a)(2)(C). The statute broadly defines "religious exercise" as "any exercise of

13

religion, whether or not compelled by, or central to, a system of religious belief."

§ 2000cc-5(7)(A). "Substantial burden" is not defined. We have explained that:

> For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available . . . versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007); *see also Davis v. Wigen*, 82 F.4th 204, 211–12 (3d Cir. 2023).

AVC does not indicate under which of *Klem*'s two prongs it challenges the Board's conduct. Indeed, AVC does not cite to *Klem* or its progeny at all. Like its facial discrimination and disparate impact claims, AVC's RLUIPA claim is therefore "ill-developed" and forfeited. *Barna*, 877 F.3d at 145.

If it were not forfeited, AVC's argument is best understood as a challenge under *Klem*'s second prong—that the City is exerting substantial pressure on AVC to modify its behavior. Still, AVC only provides conclusory assertions about how this pressure is exerted. AVC argues that the Board's decision to classify the Home as a Halfway House "is precisely the type of discrimination RLUIPA is intended to end," but does not explain how that classification is a substantial burden. Opening Br. at 43. Next, AVC protests as discriminatory the Board's conclusion that its special exception was wrongly advertised, arguing that the advertising rules do not apply to secular organizations. But the City's zoning ordinances plainly state that public notice is required for all appeals and special

14

exceptions. In short, AVC's RLUIPA claim fails to identify a burden on religious exercise, substantial or otherwise.

*　　*　　*

For these reasons, we will affirm.

15